## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 22 2016, 9:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Morice Ervin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 22, 2016

Court of Appeals Cause No.
49A02-1510-CR-1547

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49G01-1406-MR-31398

**Barnes, Judge.**

# Case Summary

[1] Morice Ervin appeals his convictions for murder and Class A felony rape. We affirm.

# Issue

[2] The sole issue is whether the trial court abused its discretion by admitting gruesome photographs of the crime scene and the victim's body.

# Facts

[3] On March 27, 2014, Shannon Kleeman ("Shannon") spent the night at her step-mother Jenny Kleeman's ("Jenny") Marion County house to care for Jenny's pets while Jenny was hospitalized. Jenny called to check on Shannon that evening, and Shannon told Jenny that Morice Ervin had stopped by. Ervin and his wife Mary Ervin lived next door to Jenny, and Jenny socialized with them regularly. Jenny owned her late husband's Mossberg twelve-gauge shotgun and previously asked Ervin to load it for her so it was available for her protection. Ervin thus knew where Jenny kept the gun. Ervin was also familiar with Jenny's dogs. Ervin had met Shannon, who visited Jenny daily, and Jenny had told Ervin that Shannon was "special, that she didn't have the mentality of the 21-year-old that she looked like." Tr. p. 165.

[4] On March 28, 2014, Crystal Combs, the sister with whom Shannon lived, went to Jenny's house to check on Shannon because she had been unable to reach her by telephone. When Combs arrived, the front door to Jenny's house was

unlocked, and Combs discovered Shannon's half-naked body lying in a pool of blood in Jenny's basement.

[5] Shannon had been shot in the head at close range with a twelve-gauge shotgun resulting in massive trauma. In order to better assess the injuries to Shannon's face and head, the forensic pathologist used surgical yarn "and sewed her face back together to better approximate and document the injuries . . . ." *Id.* at 244. He observed "an area of shotgun injury to the right and left eyes, there's fractured teeth, there's some birdshot, entry shotgun injury [] to the left cheek, her back of her skull was markedly fragmented into multiple skull fractures." *Id.* She had bird shot pellets embedded in her right hand. Shannon's right thumb was almost completely amputated by a gunshot wound. One of her breasts was bruised. There were scrapes and bruises on her neck that indicated her neck was compressed, but the forensic pathologist was unable to determine if she was strangled because the trauma to Shannon's eyes was so severe he could not assess them for petechial hemorrhages. Shannon's shirt was torn, and her pants and underwear had been removed. She suffered tears to her vagina and anus that the forensic pathologist testified would have been "extremely painful[.]" *Id.* at 254.

[6] Swabs taken from one of Shannon's breasts and under the fingernails on her left hand revealed the presence of Ervin's DNA. Ervin's DNA was also found on swabs from Shannon's vagina. Jenny's shotgun was missing from her home at the time Shannon's body was discovered; it was never found.

[7] The State charged Ervin with murder, Class A felony rape, and with an habitual offender enhancement. A jury found him guilty as charged, and the trial court sentenced Ervin to an aggregate sentence of 135 years in the Department of Correction. Ervin appeals his murder and rape convictions.

## Analysis

[8] During the trial, the trial court admitted into evidence several photographs—Exhibits 27, 28, 31, 147, and 151[1]—to which Ervin objected. Ervin contends the trial court abused its discretion by admitting these photographs of the crime scene and Shannon's body because they are gory, "served to inflame the passions of the jury," and were more prejudicial than probative. Appellant's Br. p. 10.

[9] The standard of review with regard to the admission of evidence is well-settled. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Moore v. State*, 49 N.E.3d 1095, 1101 (Ind. Ct. App. 2016). We reverse such a decision only when the admission of evidence is clearly against the logic and effect of the facts and circumstances before the court and the error affects a party's substantial rights. *Id.*

[10] "Generally, photographs depicting the crime scene and victim's body are admissible as long as they are relevant and competent aids to the jury."

---

[1] Appellant's Brief identifies one of the objectionable exhibits as 152. This appears to be a typographical error. It is clear in the record that Appellant objected to Exhibit 151, the Appellee's Brief references Exhibit 151, and, in a different portion of his Appellant's Brief, Ervin cites to Exhibit 151.

*Halliburton v. State*, 1 N.E.3d 670, 676 (Ind. 2013). "[E]ven gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally . . . although a photograph may arouse the passions of the jurors, it is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (quotation omitted) (citation omitted).

[11] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Indiana Evidence Rule 401. A trial court may, however, "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Evid. R. 403.

[12] There can be no dispute the photographs, which depict Shannon's half-naked body and the extensive injuries to her face and skull at the crime scene and in the forensic pathologist's examination room, are "gory and revolting," and they may well have aroused the passions of the jurors. *Halliburton*, 1 N.E.3d at 676. We need not, however, analyze the five photographs to determine whether the trial court should have excluded any of them pursuant to Evidence Rule 403. "'The improper admission [of evidence] is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction.'" *Evans v. State*, 30 N.E.3d 769, 776 (Ind. Ct. App. 2015)

(alteration in original) (quoting *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011)), *trans. denied*.

[13]  The statute in effect at the time these crimes were committed defined Class A felony rape as knowingly or intentionally having sexual intercourse with another person by using or threatening the use of deadly force, while armed with a deadly weapon, or resulting in serious bodily injury to a person other than the defendant. Ind. Code § 35-42-4-1. Indiana Code Section 35-42-1-1 defines murder as knowingly or intentionally killing another human being.

[14]  The record reveals Shannon was familiar with Ervin, her step-mother's neighbor and friend. Ervin knew Shannon was alone at Jenny's house. Investigators did not observe signs of forced entry into Jenny's house. Ervin knew Jenny owned a twelve-gauge shotgun and where she kept it. Ervin knew the gun was loaded; he previously loaded it for Jenny. Shannon was shot and killed by a twelve-gauge shotgun. Jenny's shotgun was missing after Shannon's murder. Ervin left his house the evening Shannon was murdered. Shannon's pants and underwear were removed, and she suffered "extremely painful" tears to her vagina and anus. Tr. p. 254. Ervin's DNA was found on Shannon's breast, under her fingernails, and in her vagina.

[15]  Even absent the five photographs at issue, there was substantial independent evidence from which the jury could conclude Ervin raped and murdered Shannon. Therefore, errors, if any, in the admission of the photographs were harmless. *See Evans*, 30 N.E.3d at 776.

# Conclusion

We conclude that any abuse of discretion in the admission of evidence was harmless. We affirm.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.